IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Maritza Dominguez Braswell**

Civil Action No. 19–cv–03223–RMR–MDB

DARREN HOFFMAN,

      Plaintiff,

v.

MICKEY SCHAETZLE, Police Officer,
ABRAHAM BALDERRAMA, Police Officer,
ROBIN DANNI, Detective,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Magistrate Judge Maritza Dominguez Braswell**

      Before the Court is "Defendants' Motion for Summary Judgment. (["Motion"], Doc. No. 75.) Plaintiff has responded in opposition to the Motion, and Defendants have replied. (["Response"] or ["Response and Declaration"], Doc. No. 78; ["Reply"], Doc. No. 144.) After the Court received notice that Defendant's criminal convictions related to the underlying events discussed below had been overturned by the Colorado Court of Appeals,[1] the Court requested further briefing to address what impact, if any, this had on the Motion. Defendants submitted a brief on this issue to the Court. (Doc. No. 93.) Plaintiff failed to submit a brief before the Court's deadline.

---

[1] A new trial is scheduled to begin on September 19, 2022. (Doc. No. 93 Ex A.)

For the following reasons, it is RECOMMENDED that the Motion be GRANTED IN PART.

## STATEMENT OF THE CASE

*Pro se* Plaintiff Darren Hoffman ["Mr. Hoffman," or "Plaintiff"] brings this action under 42 U.S.C. § 1983, asserting violations of his Fourteenth Amendment rights by Thornton Police Department Officer Abraham Balderrama ["Officer Balderrama" or "Defendant Balderrama"] and Detective Robin Danni ["Detective Danni" or "Defendant Danni"], and his Fourth Amendment rights by Thornton Police Department Officer Mickey Schaetzle ["Officer Schaetzle" or "Defendant Schaetzle"] and Defendant Balderrama. (["Amended Complaint"] Doc. No. 16.)

## I.    Material Uncontroverted Facts

Shortly before 5:00 a.m. on November 13, 2017, a resident at 1840 Rowena Street in Thornton, Colorado, called 911 to report that a man had been ringing her doorbell and pounding on her windows, asking to be let into the home. (Doc. No. 75 Ex. C at ¶ 3.) A few minutes later, Thornton Police Department Officers Mickey Schaetzle and Abraham Balderrama responded to the possible burglary attempt. (*Id.* at ¶¶ 3–4.) Upon their arrival, Officers Schaetzle and Balderrama encountered Plaintiff standing near the driveway of 1840 Rowena St. (*Id.* at ¶ 4.)

When the officers discovered him, Plaintiff was indeed attempting to enter one of the homes on Rowena Street. (Doc. No. 75 Ex. H at 8.) At the time, Plaintiff believed—and continues to believe—that he was being chased by one or more drug lords who wished to harm him. (*Id.* at 7–8.) Quite fearful, Plaintiff had taken drastic measures during the previous hour, including abandoning his car and crossing Interstate 25 by foot. (*Id.* at 8.) After realizing he

2

could not walk all the way to his own home or the Thornton Police Station, Plaintiff sought

shelter in a nearby house, drawing him to the Rowena Street neighborhood. (*Id.* at 9.) Plaintiff

was high on methamphetamine and carrying a pistol throughout this period. (*Id.* at 11– 12, 29–

30.) Plaintiff may also have ingested an unknown substance earlier in the morning, maintaining

he felt poisoned by the same person or persons he later believed were chasing him. (*Id.* at 7.)

Plaintiff observed Officers Schaetzle and Balderrama cut their squad vehicle's lights and

sirens as they approached. (Doc. No. 75 Ex. B at 37:50–38:00.) After the officers parked and

exited their vehicles, Plaintiff was first engaged by Officer Schaetzle, who identified himself as a

Thornton Police Officer and drew his service pistol. (*Id.* at 38:25–55; Doc. No. 75 Ex. C at ¶ 4;

Doc. No. 75 Ex. D at ¶ 4.) Defendant Schaetzle and Defendant Balderrama were both wearing

full officer's uniforms. (Doc. No. 75 Ex. C at ¶ 4; Doc. No. 75 Ex. D at ¶ 4; Doc. No. 75 Ex. G at

4.) The officers approached Plaintiff from different directions, giving him various commands as

he stood near the driveway of 1840 Rowena Street. (Doc. No. 75 Ex. C at ¶ 4; Doc. No. 75 Ex. D

at ¶ 4.) Plaintiff failed to comply with many of the commands the officers gave and looked

around as they approached. (Doc. No. 75 Ex. C at ¶ 4; Doc. No. 75 Ex. D at ¶ 4.) After the

officers got within 15 yards of Plaintiff, he decided to flee. (Doc. No. 75 Ex. C at ¶ 4; Doc. No.

75 Ex. D at ¶ 4; Doc. No. 75 Ex. G at 4.) As the officers pursued Plaintiff, he stopped and

crouched behind a black Toyota Tundra in the driveway of 1840 Rowena Street. (Doc. No. 75

Ex. C at ¶ 4; Doc. No. 75 Ex. D at ¶ 4; Doc. No. 75 Ex. G at 4.) Plaintiff then drew his gun and

fired at the officers, forcing them to escape to cover. (Doc. No. 75 Ex. C at ¶ 4; Doc. No. 75 Ex.

D at ¶ 4; Doc. No. 75 Ex. G at 4; Doc. No. 75 Ex. H at 10.) Six spent cartridge casings found at

the scene were all identified as originating from Plaintiff's gun. (Doc. No. 75 Ex. I at 19–20.)

Plaintiff's shots did not hit either officer. (Doc. No. 75 Ex. C at ¶ 4; Doc. No. 75 Ex. D at ¶ 4.)

After Plaintiff stopped firing, Officer Balderrama and Officer Schaetzle again attempted to apprehend Plaintiff with their service pistols drawn. (Doc. No. 75 Ex. C at ¶ 4; Doc. No. 75 Ex. D at ¶ 4.) As they approached, the officers found Plaintiff lying on the ground near the Toyota Tundra, indicating a desire to surrender to the officer. (Doc. No. 75 Ex. C at ¶ 4; Doc. No. 75 Ex. D at ¶ 4.) Plaintiff's gun had been placed on the hood of the vehicle. (Doc. No. 75 Ex. C at ¶ 4; Doc. No. 75 Ex. D at ¶ 4; Doc. No. 75 Ex. H at 10.) Officer Schaetzle holstered his weapon and moved to place Plaintiff in handcuffs while Officer Balderrama stood cover with his gun drawn. (Doc. No. 75 Ex. C at ¶ 4; Doc. No. 75 Ex. D at ¶ 4.) What happened while and immediately after, Plaintiff was placed under arrest remains subject to dispute. Plaintiff contends that one of the officers threatened him with violence, slammed him into the ground, forced him into excessively tight handcuffs, and dragged him by the handcuff chain. (Doc. No. 78 ¶ 11.) Defendants maintain that these events never happened. (Doc. No. 75 Ex. C at ¶ 5; Doc. No. 75 Ex D at ¶ 5.)

After additional officers arrived on the scene, law enforcement placed bags over Plaintiff's hands to preserve any gunpowder residue that may have been on them for testing. (Doc. No. 75 Ex. C at ¶ 4; Doc. No. 75 Ex. D at ¶ 4; Doc. No. 78 at 16–17.) Law enforcement secured the bags by wrapping tape around Plaintiff's wrists. (Doc. No. 75 Ex. C at ¶ 4; Doc. No. 75 Ex. D at ¶ 4; Doc. No. 78 at 16–17.) Plaintiff alleges that officers wrapped this tape excessively tightly to cause pain. (Doc. No 78 at ¶ 11.)

Subsequent to his arrest, Plaintiff was transported to the Thornton Police Department by Officer Andrew Aquino. (Doc. No. 75 Ex. C at ¶ 4.) At 7:15 a.m., after he was processed by Thornton Police Department staff, Plaintiff was taken to an interview room to speak with Detective Robin Danni. (Doc. No. 75 Ex. B.) Detective Danni had the bags and handcuffs removed from Plaintiff's wrists at the start of her interview. (*Id.* at 0:45–3:00.) Plaintiff spent a little over two hours in the interview room, approximately an hour of which was spent being questioned by Detective Danni. (*Id.*)

During his time in the interview room—including when Detective Danni was out of the room—Plaintiff did not do or say anything suggesting that he was in medical distress or intense pain. (*Id.*) Plaintiff discussed the events of the previous few hours, never requesting medical assistance or complaining about an injury to Detective Danni. (*Id.*) Likewise, when Detective Danni was out of the interview room, Plaintiff sat relaxed, often grooming himself but never examining or nursing possible injuries. (*Id.* at 5:00–24:00, 25:00–26:00, 1:04:00–1:27:30, 1:33:50–2:10:30.) Plaintiff maintained unencumbered movement of his hands and wrists, throughout his time in the interview room, including immediately following the removal of handcuffs. (*Id.*; *id.* at 4:30–5:30.)

Plaintiff once mentioned feeling sick and weak due to his methamphetamine use and being up all night. (*Id.* at 27:00–28:00.) Plaintiff also described various scrapes and bruises on his hands and wrist but explained they were due to events unrelated to his arrest. (*Id.* at 1:01:30–1:03:00.) After reviewing the footage, Dr. Wallace Larson opined that "within a reasonable degree of medical probability," Plaintiff "did not have any serious or significant disorder to either wrist, nor other medical problems" after being arrested on November 13, 2017. (Doc. No.

75 Ex. I at 7.) However, Plaintiff now complains of "chronic migraine headaches, [as well as] chronic wrist, hand and finger pain." (Doc. No. 16 at ¶ 21.) He alleges that his ailments stem from his arrest and a subsequent lack of medical care.

## II.    Procedural History

Following these events, on November 12, 2019, Plaintiff filed this § 1983 lawsuit, alleging violations of his Fourth, Eighth, and Fourteenth Amendment rights by various members of the Thornton Police Department, including Defendants Schaetzle, Balderrama, and Danni, as well as Officer Andrew Aquino and two "John Doe" Officers. [2] (*See generally* Doc. No. 1.) On March 23, 2021, the district court granted Defendants' motion to dismiss several of Plaintiff's claims, with the exception of his Deliberate Indifference claims against Defendants Danni and Balderrama, and his Excessive Use of Force claims against Defendants Schaetzle and Balderrama.[3] (Doc. No. 67.) Following the close of discovery, Defendants moved for summary judgment on Plaintiff's remaining claims. (Doc. No. 75.)

## STANDARDS OF REVIEW

## I.    Pro Se Plaintiff

Plaintiff is proceeding *pro se*. The Court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by

---

[2] At the court's direction, Plaintiff filed an Amended Complaint clarifying his claims on April 1, 2020. (Doc. No. 16.)

[3] Plaintiff's Eighth Amendment claims were dismissed as inapplicable because he was a pretrial detainee rather than a prisoner during all relevant periods. Plaintiff's claims against Officer Aquino and the John Doe Officers were dismissed on statute of limitations grounds. Plaintiff's deliberate indifference claim against Officer Schaetzle was dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). Finally, Plaintiff's official capacity claims were also dismissed for failure to satisfy the municipal liability standard set forth in *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978).

attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *accord Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). This rule applies to all proceedings involving a *pro se* litigant, including summary judgment proceedings. *Hall v. Bellmon,* 935 F.2d 1106, 1110 n.3 (10th Cir. 1991); *see Overton v. United States*, 925 F.2d 1282 (10th Cir. 1990) (liberally construing *pro se* pleadings in a summary judgment review). However, Plaintiff's *pro se* status does not vitiate his obligation to adhere to, and comply with, "the same rules of procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (quoting *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992)); *Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994) (stating that a *pro se* litigant must "comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure"). Nor does Plaintiff's *pro se* status entitle him to an application of different rules. *Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002). Thus, while the Court makes "some allowances" for Mr. Hoffman's "failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence structure, or his unfamiliarity with the pleading requirements," the Court will not "take on the responsibility of serving as [his] attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall,* 935 F.2d at 1110) (alteration omitted).

## II.      The Summary Judgment Standard

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing an absence of evidence to support the non-moving party's case. *Celotex*, 477

U.S. at 325. "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). The non-moving party may not rest solely on the allegations in the pleadings but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c).

"A 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986)). Whether there is a genuine dispute as to a material fact depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury," or conversely, whether the evidence "is so one-sided that one party must prevail as a matter of law." *Carey v. U.S. Postal Service*, 812 F.2d 621, 623 (10th Cir. 1987) (quoting *Anderson*, 477 U.S. at 251-52). A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson*, 477 U.S. at 248). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the non-moving party. *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

When evaluating a motion for summary judgment, a court may only consider admissible evidence. *See Johnson v. Weld Cty.*, 594 F.3d 1202, 1209–10 (10th Cir. 2010). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Concrete Works*, 36 F.3d at 1517. However, this standard does not require the Court to make unreasonable inferences in favor of the non-moving party. *Carney v. City & Cty. of Denver*, 534 F.3d 1269, 1276 (10th Cir. 2008). The non-movant must establish, at a minimum, an inference of the presence of each element essential to the case. *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994).

## ANALYSIS

## I.     Deliberate Indifference Claims

Plaintiff alleges that Defendants Danni and Balderrama violated his constitutional rights because they were "deliberately indifferent" to his obvious and serious medical needs on the morning of his arrest. (Doc. No. 16 at ¶¶ 31–36.) In his operative pleading, Plaintiff contends that he repeatedly informed members of law enforcement that the handcuffs and tape around his wrists were too tight and causing significant pain, that he was suffering from a head injury that occurred during his arrest, and that he had been "poisoned" prior to his arrest—requiring immediate medical care. (*Id.* at ¶¶ 8, 9, 11–22.) Plaintiff contends that he was also showing distinct physical signs of his injuries, yet law enforcement took no action. (*Id.* at ¶¶ 8, 9, 11–22.) Plaintiff makes specific allegations that before and during his interview, Defendant Danni observed his alleged injuries and heard his complaints but did not act. (*Id.* at ¶¶ 17–20.) Defendant further alleges that he complained about the tightness of the handcuffs and tape on his

wrist to Defendant Balderrama, who also did not act. (*Id.* at ¶ 12.) Defendants Danni and

Balderrama deny Plaintiff's allegations and now seek summary judgment on his claims.

"The Fourteenth Amendment's Due Process Clause entitles pretrial detainees to the same

standard of medical care owed to convicted inmates under the Eighth Amendment. Thus, [t]he

Fourteenth Amendment is violated if state officials are deliberately indifferent to a pretrial

detainee's serious medical needs." *Rife v. Okla. Dep't of Pub. Safety*, 854 F.3d 637, 647 (10th

Cir. 2017) (citations omitted). A deliberate indifference analysis is two-pronged, consisting of an

objective and a subjective prong. *Farmer v. Brennan*, 511 U.S. 825, 834, 837–40 (1994). Under

the objective prong, a Section 1983 plaintiff must show that he was suffering from a "sufficiently

serious" medical issue during the events in question. *Sealock v. Colorado*, 218 F.3d 1205, 1209

(10th Cir. 2000). "A medical need is sufficiently serious 'if it is one that has been diagnosed by a

physician as mandating treatment or one that is so obvious that even a lay person would easily

recognize the necessity for a doctor's attention.'" *Id.* (quoting *Hunt v. Uphoff*, 199 F.3d 1220,

1224 (10th Cir. 1999) (internal citations omitted)). "Medical delays can be sufficiently serious if

they cause substantial harm, such as permanent loss or considerable pain." *Lance v. Morris*, 985

F.3d 787, 793 (10th Cir. 2021) (internal quotation marks omitted).

If a Plaintiff satisfies the objective prong of a deliberate indifference claim, he then must

meet the subjective prong. "The subjective prong is satisfied only if the defendant knew of an

excessive risk to the plaintiff's health or safety and disregarded that risk." *Rife*, 854 F.3d at 648

(citing *Farmer*, 511 U.S. at 837). In other words, if the plaintiff demonstrates that he was

suffering from a sufficiently severe medical condition, he must show that the defendant

understood the need for medical attention but deliberately declined to act. The plaintiff may

show the defendant's knowledge of the plaintiff's health concern through direct evidence of the defendant's state of mind or through circumstantial evidence—that is, the "obviousness" of the plaintiff's medical need. However, "[t]he obviousness of a risk is not conclusive and a [member of law enforcement] may show that the obvious escaped him." *Farmer*, 511 at 843 n.8. "[D]eliberate indifference is a stringent standard of fault." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997). "A showing of simple or even heightened negligence will not suffice." *Id.* at 407.

Defendants first challenge the objective component of Plaintiff's deliberate indifference claim, arguing that Plaintiff cannot show that he suffered from any "sufficiently serious" medical condition immediately following his arrest or during his interview with Defendant Danni. (Doc. No. 75 at 10–11.) The affidavits and exhibits submitted by Defendant support the contention that Plaintiff was not suffering from a serious medical condition in the hours after his arrest.

First, the two-hour video with audio of Plaintiff in the Thornton Police Department interview shows Mr. Hoffman sitting in a relaxed manner immediately after his arrest. (Doc. No. 75 Ex. B.). He never inspects, tests, or complains about his now-alleged injuries. (*Id.*). Plaintiff appears to have the full range of motion of his hands and wrists and does not demonstrate signs of a concussion, such as confusion or memory loss. (*Id.*) Plaintiff does not ask for medical care nor reference previous requests for medical care. (*Id.*) While Plaintiff once complains about feeling weak and sick, he appears to agree with Defendant Danni's contention that he felt this way because he was coming down from methamphetamine use, not due to any serious medical issue requiring immediate attention. (*Id.* at 27:00–28:00.) And when questioned about some minor scrapes on his arms, Defendant did not use the line of questioning as an opportunity to talk

about the alleged severe pain he was in during the interview, instead simply attributing the scrapes to unrelated causes. (*Id.* at 1:01:30–1:03:00.)

Second, Defendants submitted the affidavit of Dr. Wallace Larson, who, after reviewing the relevant reports and watching the two-hour interview video, concluded that "[w]ithin a reasonable degree of medical probability, [Plaintiff] did not have any serious or significant disorder to either wrist, nor other medical problems when he was arrested on November 13, 2017, or in the custody of the Thornton Police Department." (Doc. No. 75 Ex. I at 7.)

In response to the evidence put forward by Defendants, Mr. Hoffman makes two somewhat contradictory claims that lack evidentiary support.[4] First, in his Response and Declaration, he claims that the two-hour interview indeed *does* show him suffering from serious medical distress that Detective Danni—and earlier Officer Balderrama—should have recognized. (Doc. No. 78 at ¶¶ 3, 5, 7–9.) However, as discussed, the video evidence does not support this contention. Over the course of more than two hours, Plaintiff does not appear to be in distress— even if a bit agitated. The video does not show Plaintiff nursing or complaining about any injuries. (Doc. No. 75 Ex. B.) Plaintiff also does not ever appear to demonstrate physical manifestations of pain, such as groaning, wincing, bleeding, lack of mobility, or other similar displays. (*Id.*); *cf. Rife*, 854 F.3d at 648–49 (reversing summary judgment when a video recording showed the plaintiff "groaning and complaining that his heart and chest hurt" in combination with the fact that the plaintiff had likely been in a motorcycle accident earlier that

---

[4] Plaintiff included "declarations" with his Response to the Motion. (Doc. No. 78.) Plaintiff purports to make these declarations under the penalty of perjury, though it was not notarized. For the purposes of this Recommendation, the court construes these declarations as an affidavit. Plaintiffs have not raised any specific evidentiary concerns about Plaintiff's declarations.

day, had blood on his nose, and showed evidence of a head injury); *Sealock*, 218 F.2d at 1210

(reversing summary judgment when the evidence showed that the plaintiff was showing signs of

a heart attack, including being "very pale, sweating and … vomiting"). In short, Plaintiff's

behavior shown in the interview video, combined with the statements from Dr. Wallace Larson,

leave no issue of material fact on the objective prong of Plaintiff's deliberate indifference claim.

Plaintiff seems to alternatively argue in his Response and deposition that 1) Defendants

Danni and Balderrama are lying about his alleged pleas for medical care and his physical

manifestations of severe pain *prior* to the two-hour interview (Doc. No. 78 at ¶¶ 3, 5, 7–9, 11,

12) and 2) that by the time the interview began, Plaintiff was so resigned to the fact that he

would not receive medical attention, that he stopped asking for care, complaining about his

injuries, or showing physical manifestations of his injuries. (Doc. No. 75 Ex. H at 19–21.) Put

another way, Plaintiff argues that the interview recording should be discounted in favor of his

narrative about the period immediately before the interview. This is, however, illogical. It is

implausible that a person suffering from a serious medical condition producing severe pain

would remain lucid but simply stop complaining about his injuries because he had been

unsuccessful in receiving treatment over the previous 90 minutes. Indeed, one would expect the

physical manifestations of Plaintiff's alleged injuries to grow worse and more apparent as time

went on, not simply vanish.

Additionally, Plaintiff was asked about certain apparent injuries during the recorded

interview. (Doc. No. 75 Ex. B at 1:01:30–1:03:00.) Thus, even assuming he previously asked for

care and decided to stop asking during the interview, Defendants opened the door to a renewed

request for care, and Plaintiff did not take the opportunity. (*Id*.) If a medical issue was indeed

"serious," as it must be for the deliberate indifference claim, or if a person's pain was severe, even a resigned person would take the offer of care. Plaintiff's appearance and behavior in the recorded interview strongly undercut his contention that he spent the period immediately after his arrest suffering from and complaining about serious medical issues and severe pain. *See White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995) (saying that "unsupported allegations without any significant probative evidence tending to support the complaint" are insufficient to defeat summary judgment) (internal quotation marks omitted)).

Accordingly, Plaintiff has failed to satisfy the objective component of the deliberate indifference test because there is no evidence to demonstrate a genuine factual dispute about whether he was suffering from a serious medical need "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt*, 199 F.3d at 1224 (internal citations omitted); *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" (footnote omitted)). For this reason, Officer Balderrama and Detective Danni are entitled to summary judgment on Plaintiff's deliberate indifference claim. (*Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005) (("[I]n order for [the plaintiff] to avoid summary judgment on his [Fourteenth] Amendment claims, [he] was required to set forth facts demonstrating that [his] medical need was objectively sufficiently serious, and that defendants' delay in meeting that need caused [him] substantial harm.").

14

Although there is no need to address whether Mr. Hoffman has satisfied the subjective component of the claim, for completeness the Court notes that the affidavits submitted by Defendant Balderrama and Danni demonstrate that they did not receive any information that would have placed them on notice that Plaintiff was suffering from serious medical difficulties. (Doc. No. 75 Ex A; Doc. No. 75 Ex C.) Both affidavits assert that Plaintiff made no affirmative requests for medical care, nor did he show physical manifestations of medical distress that would have put Defendant Danni or Balderrama on notice that Plaintiff required immediate attention. (Doc. No. 75 Ex A at ¶¶ 9–11; Doc No. 75 Ex C at ¶ 6.) Additionally, Plaintiff presents no evidence to refute their state of mind; for example, Plaintiff does not cite any deposition testimony where Defendants admit to a different state of mind or any circumstantial evidence of Defendants' state of mind. For that reason, there is also no genuine dispute on any material fact concerning the subjective prong of Plaintiff's deliberate indifference claim.

## II.      Excessive Use of Force Claims

Plaintiff also alleges that Officers Schaetzle and Balderrama violated his constitutional rights by using excessive force in making his arrest on the morning of November 13, 2017. (Doc. No. 16 at ¶¶ 38–51.) In his operative pleading, Plaintiff contends that Officers Schaetzle and Balderrama used "objectively unreasonable [force] in light of the … circumstances" in effecting his arrest (*Id.* at ¶ 40.) Plaintiff specifically alleges in his excessive force claim against Officer Balderrama, that Officer Balderrama assaulted him by slamming his head into the ground while conducting the arrest, by intentionally tightening the handcuffs and tape securing the gun powder residue bags excessively, and by "viciously ripping" Plaintiff off the ground by the handcuff chain. (*Id.* at ¶¶ 44, 46, 47, 49.) Plaintiff also alleges that Officer Balderrama threatened to "blow

his brains out" if he moved while placing his gun against Plaintiff's head after he surrendered.

(*Id.* at ¶ 8.) And in his excessive force claim against Officer Schaetzle, Plaintiff alleges that after

first arriving on the scene, without provocation, and without identifying himself as a police

officer, Officer Schaetzle fired his service weapon at Mr. Hoffman "multiple times." (*Id.* at ¶ 7.)

"The Fourth Amendment forbids unreasonable seizures, including the use of excessive

force in making an arrest." *Hooks v. Atoki*, 983 F.3d 1193, 1200 (10th Cir. 2020) (quoting *Casey*

*v. City of Fed. Heights*, 509 F.3d 1278, 1281 (10th Cir. 2007)); *Graham v. Connor*, 490 U.S.

386, 395 (1989) (holding that "*all* claims that law enforcement officers have used excessive

force—deadly or not—in the course of an arrest, investigatory stop or other 'seizure' of a free

citizen should be analyzed under the Fourth Amendment"). "Determining whether the force used

to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful

balancing of the nature and quality of the intrusion on the individual's Fourth Amendment

interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396

(internal quotation marks omitted). "The ultimate question 'is whether the officers' actions are

objectively reasonable in light of the facts and circumstances confronting them.'" *Hooks*, 983

F.3d at 1200 (quoting *Casey*, 509 F.3d at 1281). "This determination 'requires careful attention

to the facts and circumstances of each particular case, including the severity of the crime at issue,

whether the suspect poses an immediate threat to the safety of the officers or others, and whether

he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (quoting *Casey*, 509

F.3d at 1281).

### a.   Excessive Force Claim Against Officer Balderrama

In making the excessive use of force claim against Officer Balderrama, Plaintiff misidentified Defendant Balderrama as the officer who allegedly subdued, handcuffed, and "ripp[ed]" him off the ground. (Doc. No. 16 at ¶ 8.) After discovery, there is overwhelming evidence that Officer Schaetzle, not Officer Balderrama, handcuffed Plaintiff while Officer Balderrama stood watch. (Doc. No. 75 Ex. C at ¶ 5; Doc. No 75 Ex. D at ¶ 5.) Officer Balderrama likely had no contact with Plaintiff during the arrest. Mr. Hoffman has realized his error, and in his Response, he requested that this claim be dismissed. (Doc. No. 78 at ¶ 10.) Officer Balderrama is entitled to summary judgment on this claim as it relates to him.

Though Plaintiff mistakenly brought the excessive force allegations related to his physical arrest against Officer Balderrama, considering his status as a *pro se* plaintiff, the Court will construe these allegations as made against Officer Schaetzle. (Doc. No. 78 at ¶ 11); *see Trackwell*, 472 F.3d at 1243 ("Because [the plaintiff] appears pro se, we review his pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys." (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 & n. 3 (10th Cir.1991))). In his Response and Declarations, though admitting the mistaken identity, Plaintiff maintains that one of the two officers originally on the scene used excessive force during the arrest. (Doc. No. 78 at ¶ 11.) The record is clear, and Defendants admit, that Officer Schaetzle was the officer who handcuffed Plaintiff and handled Plaintiff immediately after the arrest. (Doc. No. 75 Ex D at 5.)

The Court thus interprets Plaintiff as alleging that Defendant Schaetzle slammed his head into the ground while conducting the arrest, intentionally tightened the handcuffs and tape on Plaintiff's wrists to an excessive level, "viciously rip[ed]" Plaintiff off the ground by the

handcuff chain, and threatened to "blow [Plaintiff's] brains out" during the arrest. (Doc. No 16 at ¶¶ 8, 44, 46, 47, 49.) Whether Officer Schaetzle is entitled to summary judgment on this claim is analyzed below.

### b.  Excessive Force Claims Against Officer Schaetzle

#### i.  *Alleged Shooting*

Plaintiff maintains that immediately after arriving on the scene, Officer Schaetzle approached Plaintiff and, without identifying himself as a police officer, suddenly fired multiple shots at him without warning. (Doc. No. 78 at ¶ 10; Doc. No. 75 at 9–10.) Defendant Schaetzle contests this allegation and has presented substantial evidence countering it.

First, the affidavits submitted by Officers Schaetzle and Balderrama, deny that either Officer fired their service weapon during the incident—before or after Plaintiff began shooting. (Doc. No. 75 Ex. C at ¶ 3; Doc. No. 75 Ex. D at ¶ 3.) In support of their contention, Defendants submitted the Colorado Bureau of Investigation Forensic Services Division ["CBI"] lab report, which found that each of the six spent cartridge cases discovered on the scene was identified as fired from Plaintiff's gun. (Doc. No. 75 Ex. I at 19–20.) The CBI did not discover any additional cartridge cases nor other evidence suggesting that Defendant Schaetzle fired his service weapon at the scene. (Doc. No. 75 Ex. I at 19–20.)

Second, Defendant Schaetzle points out that Plaintiff has previously made statements and arguments which directly contradict the assertion that an officer shot at him. During his interview with Detective Danni, Plaintiff's narrative of events did not include being shot at— before or after he fired his weapon. (Doc. No. 75 Ex B.) Indeed, in the video, Plaintiff tells Defendant Danni that the first person to approach him at the scene (later identified as Defendant

Schaetzle) identified himself as a police officer as he approached. (*Id.* at 38:00–41:45.) And Plaintiff never alleges that Defendant Schaetzle immediately fired at him upon arriving. (*Id.*) Further, Plaintiff's criminal appellate brief articulates a narrative of events nearly identical to what he described during the police station interview, not mentioning ever allegedly being shot at. (Doc. No. 75 Ex G at 4–5.) In short, Plaintiff's criminal case statements and arguments about the moments immediately prior to his arrest directly contradict his civil suit allegations. *See Johnson v. Allis-Chalmers Corp. Prod. Liab. Tr.*, 11 F. Supp. 3d 1119, 1131 (D. Wyo. 2014) ("The law is clear...that self-contradicting statements do not create an issue surviving summary judgment."); *Stanfield v. Osborne Indus., Inc.*, 52 F.3d 867, 872 (10th Cir.1995) ("We agree with the district court that plaintiff cannot create a genuine issue of material fact by contradicting his earlier statement.").

While the Court is not tasked with "weigh[ing]" the evidence at the summary judgment stage, it can find the evidence to be so "one-sided that one party must prevail as a matter of law." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson*, 477 U.S. at 249); *Carey*, 812 F.2d at 623 (quoting *Anderson*, 477 U.S. at 251–52). In such cases, the Court must determine whether a reasonable, rational jury could return a verdict in favor of the non-moving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" (quoting *First Nat'l Bank of Ariz.*, 391 U.S. at 289)).

Regarding the allegation that Defendant Schaetzle immediately and without warning fired on Plaintiff, Plaintiff has failed to establish a genuine issue for trial. Through the relevant affidavits and lab report, Defendant Schaetzle provided substantial evidence and shifted the

burden to Plaintiff to demonstrate a genuine factual dispute. In his Response and Declaration—other than reasserting the allegation in his Complaint—Plaintiff has not submitted any additional evidence that Officer Schaetzle fired at him after arriving on the scene. (Doc. No. 78.) Plaintiff has not provided an explanation as to why the only shell casings discovered at the scene came from his weapon and none discovered came from Officer Schaetzle's weapon. *See White*, 45 F.3d at 360 (saying that "unsupported allegations without any significant probative evidence tending to support the complaint" are insufficient to defeat summary judgment) (internal quotation marks omitted)). Further, Plaintiff's prior statements and criminal court documents directly contradict the claims made in his complaint, deeply undercutting their trustworthiness. Accordingly, Defendant Schaetzle is entitled to summary judgment on this claim to the extent the basis of the claim is the allegation that he used excessive force by shooting at Plaintiff prior to his arrest.

### ii. *Excessive Force in Securing the Arrest and Following the Arrest*

As discussed above, though Plaintiff mistakenly identified Defendant Balderrama as the officer who conducted his physical arrest, it is clear now that Officer Schaetzle was the one who arrested Plaintiff. Therefore, in light of his status as a *pro se* Plaintiff, and because Plaintiff maintains that he was subject to excessive force by the arresting officer, the Court construes Plaintiff's allegations against Defendant Balderrama in connection with the arrest, as brought against Defendant Schaetzle.

In an excessive force analysis, the ultimate outcome turns on the "objective reasonable[ness]" of the force used. The allegations made by Plaintiff include that his head was slammed into the ground, he was threatened with being shot while a gun was placed to his head,

he was placed in excessively tight wrist restraints, and he was violently led about by the handcuff chain—all after he was physically restrained or had already surrendered to law enforcement and placed his gun on the hood of a vehicle away from his body and out of reach. (Doc. No. 78 at ¶ 11; Doc. No. 75 Ex. H at 12–17.) If proven, a fact finder may determine that these acts were unreasonable for purposes of the Fourth Amendment. *Hooks*, 983 F.3d at 1200–01 (describing that while "some" level of force may be justified while an individual poses an immediate threat to officer safety, "[a]n officer can be liable for using excessive force against a suspect who 'no longer posed a threat'" (quoting *Estate of Smart by Smart v. City of Wichita*, 951 F.3d 1161, 1176 (10th Cir. 2020))); *see, e.g.*, (Hadley v. Gutierrez, 526 F.3d 1324 (11th Cir. 2008) (finding that punching an arrestee in the stomach while he was handcuffed constituted excessive force under the Fourth Amendment).

The Court is left to review competing affidavits and little other evidence on this claim. Defendants Schaetzle and Balderrama's affidavits—submitted in support of the Motion—both deny that any excessive force, as described by Plaintiff, was used in securing his arrest or during the moments immediately following his arrest. (Doc. No. 75 Ex. D at ¶ 5; Doc. No. 75 Ex. C at ¶ 5.) Meanwhile, Plaintiff's "Declarations" in his Response to the Motion—which the Court construes as an affidavit—reassert the allegations of excessive force he made in the Complaint.[5] (Doc. No. 78 at ¶ 11.) Plaintiff also articulated the same allegations in his deposition. (Doc. No. 75 Ex. H at 12–17.) Defendants' Reply labels the allegations of excessive force in connection with Plaintiff's arrest "fanciful" and "not corroborated by admissible competent evidence," but

---

[5] *See* fn. 4.

has not directed the Court to any additional evidence refuting Plaintiff's claim.[6] (Doc. No. 79 at 8.) Likewise, Defendant has not submitted any additional evidence directly supporting his allegation of excessive force at the time of the arrest.

Here, then, to award summary judgment to Defendant Schaetzle on this claim, the Court is required to make a credibility determination, a function outside the Court's purview at this stage in the proceedings. *Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970))). "Summary judgment concerns the sufficiency of the evidence to present an issue for trial, not the weight of such evidence." *Carey*, 812 F.2d at 623 (citing *Anderson*, 477 U.S. at 249). At this stage, when the evidence presented on a claim is such that the court can make reasonable inferences "of the presence of each [essential element]" to the non-moving party's claim, summary judgment cannot be awarded. *Hulsey*, 43 F.2d at 557.

For the foregoing reasons, Defendant Schaetzle is not entitled to summary judgment to the extent the basis of the claim is the allegation that he used excessive force in securing Plaintiff's arrest or in the moments immediately following the arrest.

---

[6] While certain circumstantial evidence can be construed to support Defendants' Motion on this claim—e.g., that Plaintiff does not appear injured during his police station interview—this evidence is far from creating a picture "so one-sided" that the Court must grant summary judgment as a matter of law.

**WHEREFORE**, for the foregoing reasons, this court respectfully

**RECOMMENDS** that "Defendants' Motion for Summary Judgment" (Doc. No. 75) be **GRANTED in part** and **DENIED in part** as follows:

1. Defendant Balderrama and Defendant Danni should be awarded summary judgment on Plaintiff's claim of deliberate indifference under the Fourteenth Amendment.

2. Defendant Balderrama should be awarded summary judgment on Plaintiff's claim of excessive force under the Fourth Amendment.

3. Defendant Schaetzle should be awarded summary judgment on Plaintiff's claim of excessive force under the Fourth Amendment to the extent the claim is based on the allegation that he fired his service weapon at Plaintiff without warning or cause.

4. Defendant Schaetzle should be denied summary judgment on Plaintiff's claim for excessive force under the Fourth Amendment to the extent the claim is based on the allegation that he was excessively aggressive and forceful in conducting the arrest itself.

### ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo

review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 30th day of August, 2022.

BY THE COURT:

_____
Maritza Dominguez Braswell
United States Magistrate Judge